UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

BALEKI F. CAMPBELL,                                    Case No. 12-CV-2657 (PJS/JSM)

                    Plaintiff,

v.                                                                          ORDER

CHIPOTLE MEXICAN GRILL, INC.,

                    Defendant.

---

Ryan H. Ahlberg, AHLBERG LAW, PLLC, for plaintiff.

Jacqueline R. Guesno and Tanya E. Milligan, MESSNER & REEVES LLC; Kathleen Michaela Brennan, MCGRANN SHEA CARNIVAL STRAUGHN & LAMB, CHTD., for defendant.

This is an unusual employment-discrimination case.  Plaintiff Baleki F. Campbell alleges that defendant Chipotle Mexican Grill, Inc. ("Chipotle") fired him — not because of what his ethnicity *is*, but because of what his ethnicity is *not*.  Specifically, Campbell alleges that Chipotle hired him under the mistaken impression that he was Hmong — and then, when it learned that he was not Hmong, it fired him in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.01 et seq.  This matter is before the Court on Chipotle's motion for summary judgment.  For the reasons explained below, Chipotle's motion is granted, and Campbell's complaint is dismissed.

## I.  BACKGROUND

In late February or early March 2012, Campbell attended a job fair in Minneapolis. Campbell Dep. 25-26 [ECF No. 18-10].  At that job fair, Campbell met Phil Sieden.  *Id*. at 26.

Sieden works for Chipotle as a "[r]estauranteur."[1]  Sieden Dep. 6 [ECF No. 18-1].  Sieden encouraged Campbell to apply for a position at one of the restaurants that he oversaw.  Campbell Dep. 26.

Campbell did so, and a short time later, he interviewed for a position at the Chipotle restaurant in Vadnais Heights, Minnesota.  *Id*. at 31-32; Sieden Dep. 41.  Several people were involved in the interview and hiring process, including Sieden, Derek Her (a manager at the Vadnais Heights restaurant), and Xao Kong (another manager at that restaurant).  *See* Sieden Dep. 42.  This management team decided to hire Campbell, *id*., and Campbell began working at the Vadnais Heights restaurant on March 28, 2012, *see* Compl. ¶ 10 [ECF No. 1-1].

Although Sieden is not Hmong, *see* Brennan Aff. Ex. B [ECF No. 18-2], the workforce of the Vadnais Heights Chipotle includes many employees who are Hmong, including both Her and Kong, *see* Sieden Dep. 15-36 (identifying 21 of 37 employees and former employees as Hmong or Hmong-American, and 2 of those 37 employees as being of unknown ethnicity).  Campbell is "African-American and Korean-American."  Compl. ¶ 4.  He alleges, however, that due to his short stature and appearance, "he could be easily confused for a Hmong [or] Hmong-American . . . ."  *Id*. ¶ 5; *see also* ECF No. 20 at 1.  Campbell claims that his appearance caused Sieden and the other Chipotle managers to believe that he was Hmong, and he contends that this mistake contributed to their decision to hire him.  Compl. ¶ 19.  He acknowledges, however, that Sieden did not ask him if he was Hmong, *see* Campbell Dep. 28-29, and Campbell does not allege that anyone else asked him whether he was Hmong at any time — before or during his employment.

---

[1]Chipotle explains that "[a] restauranteur oversees the management team in one or more restaurants and assists in recruiting, hiring and developing new managers for the company." ECF No. 15 at 7.

Campbell's employment with Chipotle did not go smoothly.  He admits that he arrived late to work on at least six occasions between March 28, 2012 (the date he began working) and September 6, 2012 (the date he was fired).[2]  *See* Campbell Dep. 127-32 [ECF No. 18-11]. Campbell also acknowledges that managers spoke to him each month about improving his attitude at work.  *Id.* at 197.   Finally, Campbell admits that his relationship with coworkers was sometimes strained, including one altercation with a coworker that required Sieden's intervention.  *Id.* at 171-72.  Sieden testified that this altercation was "pretty significant," and that his resulting intervention was unlike anything he had "ever had to do" during his "career at Chipotle . . . ."  Sieden Dep. 77.

On September 6, 2012, Campbell arrived late for work for (at least) the seventh time. Kong Aff. ¶ 9 [ECF No. 17].  The Chipotle management team — led by Kong, who was managing the Vadnais Heights restaurant on that date — decided to terminate Campbell's employment.  *Id.* ¶ 10.  Kong explained to Campbell that Chipotle was firing him due to his

---

[2]The record is unclear about the exact number of times that Campbell arrived late. Campbell admitted at his deposition that he arrived late on six occasions prior to September 6, 2012.  *See* Campbell Dep. 127-32 [ECF No. 18-11].  In addition, Kong stated that Campbell arrived late on September 6, 2012, *see* Kong Aff. ¶ 9 [ECF No. 17], and Campbell has not disputed this statement.  The Court therefore assumes, for purposes of ruling on Chipotle's summary-judgment motion, that Campbell was tardy on seven occasions.

In its reply brief, Chipotle claimed (for the first time) that Campbell was tardy on an additional five occasions, bringing the total number of late arrivals to twelve.  *See* ECF No. 22 at 7.  The Court has not considered these additional alleged late arrivals for two reasons.  First, these five occasions were not mentioned by Chipotle until its reply brief, and thus Campbell did not have an opportunity to respond to Chipotle's allegation.  Second, the only evidence of Campbell being late on four of those five occasions is a spreadsheet showing the time that he *arrived*, but not the time that he was *supposed* to arrive.  *See* Milligan Aff. Ex. A [ECF No. 23-1].  Without such evidence, the Court cannot conclude that Campbell was late on any of those occasions.

attendance issues and lack of "team integration."  Kong Dep. 9 [ECF No. 18-3].  The next day, Campbell returned to the restaurant and asked Kong why he had been fired, *see* Campbell Dep. 223; unbeknownst to Kong, Campbell was recording their conversation on his phone, *id*. Kong reiterated that Campbell was fired due to his attendance issues and his poor interaction with coworkers.  *Id*. at 225.  Campbell's ethnicity was not referred to during either of these conversations.

Campbell now alleges that Chipotle discriminated against him on account of his ethnicity.  According to Campbell, the Chipotle management team believed that he was Hmong when they hired him.  When those managers discovered that he was not Hmong, says Campbell, they used his tardiness, poor attitude, and inability to get along with his coworkers as a pretext for firing him, thus violating the MHRA.  *See* Compl. ¶¶ 19-20.  Chipotle moves for summary judgment, arguing that a reasonable jury could not conclude, based on the evidence in the record as a whole, that it terminated Campbell because he was not Hmong.[3]

---

[3]Chipotle also argues that it is entitled to summary judgment because Campbell has failed to mitigate any damages suffered as a result of the allegedly discriminatory firing.  *See* Campbell Dep. 258-59 (admission by Campbell that he has not looked for work since September 2012). Even if Campbell has failed to mitigate his damages, however, he nevertheless would be entitled to nominal damages should he prove that his termination was motivated by racial animus.  *Cf. Ollis v. HearthStone Homes, Inc.*, 495 F.3d 570 (8th Cir. 2007) (affirming judgment awarding nominal damages for federal claim of employment discrimination); *Baer v. J.D. Donovan, Inc.*, 763 N.W.2d 681 (Minn. Ct. App. 2009) (assuming that, under that MHRA, a prevailing plaintiff is entitled to nominal damages and attorney's fees if he is unable to prove actual damages). Accordingly, Campbell's failure to mitigate his damages is not a basis for granting summary judgment to Chipotle.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the lawsuit under the substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

### B.  Discrimination

The MHRA forbids an employer from discharging an employee because of the employee's race or national origin.  *See* Minn. Stat. § 363A.08, subd. 2.  Campbell does not have "direct" evidence that he was terminated because of his ethnicity, and therefore his discrimination claim must be analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See also Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 n.4 (8th Cir. 2007) (explaining that federal precedent may be used to construe the MHRA).  To establish a prima facie case of discrimination under that framework, a plaintiff must show that he:  (1) is a member of a protected class; (2) was qualified for his job; (3) suffered an adverse employment action; and (4) can provide facts that give rise to an inference of unlawful discrimination.  *See Butler v. Crittenden Cnty., Ark.*, 708 F.3d 1044, 1050 (8th Cir. 2013).  If the plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse

employment action.  *See Canady v. Wal-Mart Stores, Inc.*, 440 F.3d 1031, 1034 (8th Cir. 2006).

If the employer does so, the burden shifts back to the plaintiff to show that the employer's

articulated reason for taking the adverse action is a pretext for unlawful discrimination.  *Id.*

   The Court will assume, for purposes of its analysis, that Campbell has established a

prima facie case.  The Court also finds that Chipotle has advanced legitimate, nondiscriminatory

reasons for Campbell's termination — specifically, his tardiness, poor attitude, and inability to

get along with his coworkers.  Kong Dep. 9.  Accordingly, the Court turns to the final stage of

the *McDonnell Douglas* analysis:  Is there sufficient evidence in the record for a reasonable jury

to find that Chipotle's proffered reasons for firing Campbell were pretexts for unlawful

discrimination?

   "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed

to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or

(3) shifted its explanation of the employment decision."  *Gibson v. Am. Greetings Corp.*, 670

F.3d 844, 854 (8th Cir. 2012) (quotation omitted).  Campbell does not allege that Chipotle has

been inconsistent in explaining the reasons for his termination; indeed, he acknowledges that

both times Kong discussed his termination with him — including once while being secretly

recorded — Kong explained that Campbell had been fired due to his chronic tardiness and poor

interaction with coworkers.  Campbell Dep. 222-23, 225.  Nor does Campbell allege that

Chipotle violated its own policies when it fired him.  Instead, Campbell argues that a reasonable

jury could conclude that Chipotle used his ethnicity as a factor in terminating him because it did

not fire Hmong employees who had committed similar infractions.

In support of his argument, Campbell points out that several Hmong employees at the

Vadnais Heights restaurant were not fired despite arriving late for work as often as (or more

often than) Campbell during the period that he was employed by Chipotle.  The Court agrees

with Campbell[4] that five Hmong employees — Por Choua Xiong (twelve late arrivals), Meng

Lee (nine late arrivals), Blong Moua (seven late arrivals), Tou Fue Yang (six late arrivals), and

Hsa Nobel (five late arrivals and one failure to arrive for a scheduled shift) — are similarly

situated to Campbell *with respect to tardiness.  See* ECF No. 20 at 4-5.

But tardiness was not the only reason proffered by Chipotle for Campbell's termination.

Rather, Chipotle has consistently maintained that tardiness *and* behavioral issues prompted its

decision to fire Campbell.  *See also* Campbell Dep. 197 (testimony from Campbell that Chipotle

managers spoke with him monthly about needing to improve his attitude); *id*. at 225 (testimony

from Campbell that he was told his interaction with coworkers played a role in his termination).

In order to demonstrate pretext, Campbell must show that he and the alleged comparators are

"similarly situated in *all* relevant respects."  *Muor v. U.S. Bank Nat'l Ass'n*, 716 F.3d 1072, 1078

(8th Cir. 2013) (quotation omitted and emphasis added).  In other words, Campbell must show

---

[4]Campbell's evidence about his coworkers' tardiness suffers from the same problem as
Chipotle's evidence about Campbell's tardiness.  Campbell has submitted a spreadsheet showing
when his coworkers *arrived* at work, but there is no evidence in the record showing when those
coworkers were *supposed* to arrive at work.  *See* Ahlberg Decl. Ex. A [ECF No. 21-1].  Chipotle,
however, has not disputed Campbell's allegations about the late arrivals of his coworkers,
despite having had an opportunity to do so in its reply brief.  The Court therefore assumes that
these coworkers were late on the dates alleged by Campbell.

not only that the comparators were late at least as often as he was, but also that they displayed a poor attitude and had difficulty getting along with their coworkers.[5]

The only evidence cited by Campbell regarding the attitude and conduct of his coworkers is a set of performance reviews done by Chipotle in October 2012. *See* ECF No. 20 at 5. But these performance reviews show exactly the opposite of what Campbell contends, as each of the alleged comparators was graded as meeting or exceeding expectations with respect to attitude and interaction with coworkers. *See* Ahlberg Decl. Ex. C at 7 [ECF No. 21-5] (grading Blong Moua's performance with respect to interaction with coworkers as above expectations); *id*. at 22 (grading Hsa Nobel's performance with respect to interaction with coworkers as meeting expectations and describing him as "work[ing] well with the team and . . . always ready to leng [sic] a helping hand"); *id*. at 34 (grading Meng Lee's performance with respect to interaction with coworkers as meeting expectations and stating that he did "a fantastic job communicating with crew members and managers"); *id*. at 49 (grading Tou Fue Yang's performance with respect to interaction with coworkers as meeting expectations).[6] In other words, the performance reviews cited by Campbell support *Chipotle's* argument that his coworkers were *not* similarly situated to Campbell in all relevant respects.

---

[5]Chipotle contends that "Campbell was hired as a 'fast track' management candidate" and thus "was expected to perform in such a way as to justify a higher rate of pay" than the above-listed employees. ECF No. 22 at 5-6. Because more was expected of Campbell, says Chipotle, he was not similarly situated to any of those employees. But the record is unclear about the extent to which these higher expectations were ever communicated to Campbell, or whether these higher expectations in fact entered into Chipotle's decisionmaking at the time that it terminated Campbell. The Court therefore has not considered these putative higher expectations in determining whether any other Chipotle employee was similarly situated to Campbell.

[6]The performance review of the fifth employee who was similarly situated with respect to lateness (Por Choua Xiong) is not in the record.

In response, Campbell notes that he received grades comparable to those received by many of the above-listed coworkers in his April 2012 performance review.  *See* ECF No. 20 at 5. But Campbell's performance review [*see* ECF No. 18-8] was completed less than three weeks after he started working for Chipotle — that is, before he began displaying a poor attitude and having problems getting along with his coworkers.  *See* Sieden Dep. 76-77 (describing the June 30, 2012 altercation requiring Sieden's intervention); Brennan Aff. Ex. I at 4 [ECF No. 18-9] (August 26 development journal showing manager's comment that Campbell needed to work on "communicating with our team/interaction.").  Comparing Campbell's *April* performance review (which was done shortly after he started) to his coworkers' *October* performance reviews (which were done many months after they started) is therefore a poor way of determining whether those coworkers were similarly situated at the time that Campbell was fired.

Apart from the performance reviews, Campbell cites nothing in the record suggesting that any of the alleged comparators had attitude and team-integration problems similar to his. Moreover, the Court has independently reviewed the entire record and found no such evidence. Without such evidence, Campbell cannot show that his Hmong coworkers were similarly situated to him in all relevant respects.

For these reasons, the Court holds that a reasonable jury could not find that Chipotle's proffered reasons for firing Campbell were merely a pretext for unlawful discrimination. Chipotle's motion for summary judgment is therefore granted.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.      The motion for summary judgment of defendant Chipotle Mexican Grill, Inc.

        [ECF No. 14] is GRANTED.

2.      The complaint [ECF No. 1-1] is DISMISSED WITH PREJUDICE AND ON THE

        MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  March 19, 2014                          s/Patrick J. Schiltz
                                              Patrick J. Schiltz
                                              United States District Judge